UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAVID KNUDSON,

FILED
CLERK

3/4/2026 4:27 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

                    Plaintiff,

-against-

**MEMORANDUM OF
DECISION AND ORDER**

Civil Action
No. 21-582 (GRB) (ARL)

COUNTY OF NASSAU; NASSAU COUNTY SHERIFF'S
DEPARTMENT; NASSAU COUNTY CORRECTIONAL
CENTER; NASSAU HEALTH CARE CORPORATION INC.;
MINOU ABSY-JAGHAD, MD (provider # 13996);
HANI MEMBERS, PA; CORRECTION OFFICER FOLEY
(Shield No. 2724); CORRECTION OFFICER LAUTH;
CORRECTION OFFICER ANTHONY MARTINGANO
(Shield No. 3179); JOHN and JANE DOE CORRECTIONAL CENTER
Employees/Agents Nos. 1-10, and JOHN and JANE DOES Medical Providers,
Nos. 11-20, all defendants in their individual and official capacities,

                    Defendants.
------------------------------------------------------------X

**GARY R. BROWN, United States District Judge**:

Before this Court are summary judgment motions by (1) Corrections Officers Christopher Foley, Kenneth Lauth, and Anthony Martingano (collectively "Officer Defendants") and (2) Dr. Minou Absy Jaghad and Physician Assistant Hani Members (collectively "Medical Defendants") against plaintiff David Knudson regarding federal constitutional and state negligence claims. *See* Docket Entries ("DE") 78-3, 80-17. On the federal constitutional claims, the Court grants summary judgment for Foley, Lauth, and the Medical Defendants, but denies summary judgment as to Martingano. Regarding the state claims, the Court grants summary judgment for the Officer and Medical Defendants.

**Background**

1

This case arises out of an altercation at Nassau County Correctional Center (NCCC), where plaintiff was an inmate and where each of the Officer Defendants worked at the time of the incident. DE 68-1 ¶¶ 4-6, 29. Plaintiff had been arrested in September 2019 for driving while intoxicated, which violated his parole stemming from a conviction years earlier. DE 78-7 at 17.

Michael Durham and Kevin Torres, two inmates, assaulted plaintiff on September 29, 2019 while plaintiff was on the prison phone with his girlfriend. DE 68-1 ¶ 30. Plaintiff alleges that he alerted Foley and Lauth the night before the assault that Durham had threatened him not to use the phone. DE 78-28 at 11-12. About twenty minutes before the assault, plaintiff alleges that he asked Martingano if he could be moved to a different unit citing Durham's threat that if plaintiff used the phone, Durham would "make [plaintiff] bleed" and that the phone "belonged to the black or the Bloods inmates." DE 78-7 at 39. Martingano allegedly ignored plaintiff's request. *Id.* Martingano denies that plaintiff told him he feared for his safety. DE 64-6 at 58.

Martingano was seven feet away from plaintiff when the assault unfolded. DE 68-1 ¶ 31. After Durham struck plaintiff several times in the back of his head and right ear, DE 78-7 at 27-28, Torres punched plaintiff on the left side of his head, *id.* at 44. While Martingano argues that he "immediately intervened and rushed in to prevent further escalation," *id.*, plaintiff contends that he was "laying" in a pool of blood "for a while" and notes that the blood was drying on his face before an officer intervened to de-escalate, DE 64-5 at 75.

Following the assault, plaintiff was taken to the emergency room at Nassau University Medical Center (NUMC), where staff stitched the lacerations to his left ear and forehead and took a CT scan. DE 69-1 ¶¶ 3, 5. Dr. Jaghad, a physician at NUMC, determined that plaintiff was suffering from post-concussion syndrome based on tests and plaintiffs' complaints of blurry

vision, seeing spots, nausea, right hand numbness, and headaches. *Id.* ¶¶ 7-8. At a sick call on October 4, 2019 plaintiff complained to PA Members, who also worked at NUMC, about ear ringing, dizziness, and lightheadedness. *Id.* ¶ 9. Members referred plaintiff to an optometrist due to his complaints of vision problems. *Id.* As a result of the referral, plaintiff was prescribed eyeglasses. DE 80-17 at 3. On October 10, 2019, Members saw plaintiff for another visit and concluded that his symptoms were consistent with post-concussion syndrome. DE 69-1 ¶ 11. She issued follow-up consultations with a podiatrist and optometrist based on plaintiff's complaints about foot pain and blurry vision. DE 80-17 at 4. Plaintiff argues that the Medical Defendants committed constitutional violations and breached a duty of care by not referring him to an otolaryngologist to assess his hearing. *See* DE 80-27 at 13-14.

At summary judgment, plaintiff's claims are: (1) federal constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for (i) deliberate indifference to plaintiff's conditions of confinement against the Officer Defendants, (ii) failure to intervene against Martingano, and (iii) inadequate medical care against the Medical Defendants; and (2) state negligence claims against both the Officer and Medical Defendants.

**Discussion**

***Summary Judgment Standard***

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

***Section 1983 Claims***

*Plaintiff's Status as a Pretrial Detainee*

3

"A post-conviction-prisoner's deliberate indifference claim is analyzed under the Eighth Amendment while the same claim raised by a pretrial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment." *Horace v. Gibbs*, 802 Fed.Appx. 11, 13-14 (2d Cir. 2020). The Second Circuit has "not addressed where parolees fall on the continuum." *Id.* at 14. However, district courts within this Circuit have observed that "a detained parolee's status is more akin to that of a pretrial detainee where he has not yet had a hearing or been found guilty of the violation." *McKoy v. Cnty. of Suffolk*, No. 14-CV-249 (JMW), 2025 WL 3171032, at *3 (E.D.N.Y. Nov. 13, 2025) (internal quotations omitted); *see also Brooks v. Westchester Cnty. Jail*, No. 19-CV-10901 (PMH), 2021 WL 3292229, at *5 (S.D.N.Y. Aug. 2, 2021) (finding that plaintiff "resembled more closely a pretrial detainee" where he "had not yet been adjudicated guilty for violating the terms of his underlying sentence(s)"); *Kravitz v. Cty. of Columbia*, No. 16-CV-1251, 2019 WL 4395462, at *5 (N.D.N.Y. May 15, 2019) (concluding that the Fourteenth Amendment applied to the plaintiff's deliberate indifference claim because "it is undisputed that plaintiff was incarcerated for a parole violation and it is unclear at what time during the period of plaintiff's incarceration he had his revocation hearing"), *adopted sub nom. Kravitz v. Lanphear*, 2019 WL 3315158 (N.D.N.Y. July 24, 2019).

It is undisputed that plaintiff was arrested in September 2019 for a parole violation. DE 78-7 at 17. There is no evidence in the record that plaintiff was found guilty of his parole violation prior to the September 29, 2019 assault. Therefore, plaintiff was a pretrial detainee and the Court analyzes his constitutional claims under the Fourteenth Amendment's Due Process Clause.

*Deliberate Indifference Claims Against the Officer Defendants*

4

A pretrial detainee must demonstrate that a defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed" even though the defendant "knew, or should have known, that the condition posed an excessive risk to [the detainee's] health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). The Second Circuit has affirmed grants of summary judgment where statements detainees made to corrections officers purporting to convey safety threats "lacked detail." *Morgan v. Dzurenda*, 956 F.3d 84, 88, 90 (2d Cir. 2020); *see Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 621 (2d Cir. 1996) ("[W]e note that the issue is not whether [plaintiff] identifies his enemies by name to prison officials, but whether they were aware of a substantial risk of harm to [plaintiff]. Although a prisoner's identification of his enemies is certainly relevant to the question of knowledge, it is not, necessarily, outcome determinative."); *Edwards v. Black*, 854 F. App'x 382, 384 (2d Cir. 2021) ("[P]rison officials are not deliberately indifferent when they fail to act on … vague threats of inmate attacks"); *Haslinger v. Westchester Cnty.*, 2023 WL 219198, at *2 (2d Cir. Jan. 18, 2023) (finding that plaintiff's deposition testimony that he told a corrections officer he needed to be separated from his assailant because "of the little beef [they] had" did not put the officer on notice of an "excessive risk to [plaintiff's] health or safety.").

No reasonable juror could find that Foley and Lauth were deliberately indifferent to Durham's threats. Plaintiff argues in his brief that he "informed Foley and Lauth the night before the attack" of such threats. DE 78-28 at 13. However, the only evidence of this assertion comes from plaintiff's deposition, where he testified that he asked a "chunky, chunky guy" the night before the assault why he was "here with all these kids" and requested to be moved. DE 78-7 at 40-41. Plaintiff "has offered no evidence indicating that he communicated the threat [Durham] posted with any degree of specificity" to Foley or Lauth. *Haslinger*, 2023 WL 219198, *at 2.

However, there are factual disputes regarding Martingano's liability.  Plaintiff alleges that about twenty minutes before the assault, he told Martingano of Durham's threats that the phone belonged to the Bloods and that Durham would "make [plaintiff] bleed" if he used the phone, but that Martingano "pretty much blew [plaintiff] off."  DE 78-7 at 39.  While Martingano disputes that plaintiff alerted him to the threats, DE 64-6 at 58, a jury that credits plaintiff's version of events might reasonably find that Martingano disregarded a known safety risk that plaintiff faced.

Accordingly, the Court grants summary judgment for Foley and Lauth, but denies summary judgment for Martingano.

### Failure to Intervene Claim Against Martingano

To prevail on a failure to intervene claim, a plaintiff must demonstrate that "(1) the officer had a *realistic* opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Pierce v. City of New York*, 805 Fed.Appx. 70, 72 (2d Cir. 2020) (quoting *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012)). "[W]hether a defendant had a realistic chance to intervene," depends on such factors as "the number of officers present, their relative placement, the environment in which they acted, and the nature of the assault[.]" *Figueroa v. Mazza*, 825 F.3d 89, 107 (2d Cir. 2016).

The Court cannot dismiss the failure to intervene claim at summary judgment, because there are factual disputes as to whether Martingano responded reasonably.  Martingano stood approximately seven feet away as Durham and Torres assaulted plaintiff.  DE 68-1 ¶ 31.

6

Martingano contends that he "immediately intervened and rushed in to prevent further escalation," *id.*, while plaintiff alleges that he was lying in a "giant" pool of blood "for a while" before Martingano intervened to ensure plaintiff's safety, DE 64-5 at 75. The fact that Torres, who had been "off to the side," was able to punch plaintiff after Durham landed up to as many as five blows could raise questions about how quickly Martingano responded. DE 78-7 at 44. Whether Martingano acted reasonably in light of the circumstances requires assessing credibility, which the Court cannot do at summary judgment.

Accordingly, Martingano's summary judgment motion on plaintiff's failure to intervene claim is denied.[1]

*Inadequate Medical Care Claim Against the Medical Defendants*

To state a constitutional claim for inadequate medical care under the Fourteenth Amendment, a plaintiff must show that the defendant "knew, or should have known" that "an excessive risk to health or safety" would result from the defendant's action or omission. *Darnell*, 849 F.3d at 35. "[T]he alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Importantly, "[a] detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Darnell*, 849 F.3d at 36. "[A] plaintiff must demonstrate, 'at a minimum,' that the defendant provided deficient

---

[1] The Officer Defendants argue they are entitled to qualified immunity on the deliberate indifference and failure to intervene claims. Qualified immunity shields officials from suit "unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation omitted). The Court is unable to decide whether Martingano is entitled to qualified immunity at this stage in light of the factual disputes discussed *supra*. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court.") (internal quotations omitted).

medical treatment with 'culpable recklessness … that evinces a conscious disregard of a substantial risk of serious harm' to his health." *Swinton v. Livingston Cnty.*, No. 21-1434, 2023 WL 2317838, at *2 (2d Cir. Mar. 2, 2023) (quoting *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021)).

Plaintiff argues that the Medical Defendants committed a constitutional violation by not referring him to an otolaryngologist for a hearing test.  However, it is undisputed that neither Dr. Jaghad nor PA Members intentionally or recklessly ignored severe risks to plaintiff's health.  According to Dr. Jaghad, and undisputed by plaintiff, plaintiff's CT scan read for a small left parietal scalp hematoma, which would not ordinarily cause a loss of hearing.  DE 80-28 ¶ 6.  During plaintiff's visit with Dr. Jaghad, plaintiff complained of blurry vision, spots, nausea, right hand numbness, and headaches.  DE 80-17 at 8.  Dr. Jaghad examined plaintiff and determined that he was suffering from post-concussion syndrome.  *Id.*  Members saw plaintiff twice; she diagnosed plaintiff with post-concussion syndrome after conducting a physical exam and checking his vitals, and referred him to a podiatrist and optometrist in light of his complaints of foot pain and "haziness."  *Id.* at 9; DE 80-10 at 7.  Plaintiff never complained of hearing loss during his visits with Jaghad or Members.  DE 80-10 at 13; DE 80-29 at 3.

While plaintiff proffers a medical expert who opined that the Medical Defendants departed from the requisite standard of care by not referring him to an otolaryngologist, "negligence alone is insufficient to make out a deliberate indifference claim." *Grimmett v. Corizon Med. Assocs. of New York*, No. 15-CV-735 (JPO)(SN), 2017 WL 2274485, at *5 (S.D.N.Y. May 24, 2017).  Plaintiff's allegations of negligence cannot create an issue of fact regarding a constitutional claim for inadequate medical care.  Based on the record, it is

8

undisputed that the Medical Defendants did not intentionally or recklessly mistreat plaintiff's injuries.

Accordingly, the Court grants summary judgment for the Medical Defendants.

### *Negligence Claims*

Much of the parties' briefing concerns whether plaintiff was required to satisfy the notice-of-claim requirement. "Under New York law, a notice of claim is a condition precedent to bringing personal injury actions against municipal corporations." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). "[I]f an action or special proceeding is commenced against [an officer, appointee, or employee of a public corporation], but not against the public corporation, service of the notice of claim upon the public corporation shall be required *only if* the corporation has a statutory obligation to indemnify such person under this … or any other provision of law." *Longsworth v. Cnty. of Nassau*, No. 17-CV-6787 (KAM)(ARL), 2020 WL 5369044, at *2 (E.D.N.Y. Sept. 8, 2020) (quoting N.Y. Gen. Mun. Law § 50-e(1)(b)).

### *Officer Defendants*

Nassau County had a statutory duty to indemnify the Officer Defendants in the instant action. The Nassau County Administrative Code provides:

> The County shall indemnify and save harmless its employees in the amount of any judgment including punitive or exemplary damages obtained against such employees in any state or federal court, or in the amount of any settlement of a claim for lawful damages provided that the act or omission from which such judgment or settlement arose, occurred while the employee was acting within the scope of his public employment or duties…

Nassau Cnty. Admin. Code § 22-2.8(3)(a); *Longsworth*, 2020 WL 5369044, at *3 (finding at summary judgment that the Nassau County Administrative Code contained a statutory duty to indemnify Nassau County police officers acting within the scope of employment). In this case, the allegations against the Officer Defendants concern whether they were deliberately indifferent

9

to threats plaintiff faced and, in the case of Martingano, whether he failed to intervene as the assault unfolded.  These defendants' alleged acts and omissions occurred within the scope of their work as corrections officers, who under New York state law, are entrusted with "[c]ustody and control of inmates and the maintenance of prison safety and security."  *Cruz v. New York*, 24 F. Supp. 3d 299, 310 (W.D.N.Y. 2014) (quoting *Cepeda v. Coughlin*, 128 A.D. 2d 995, 997 (3d Dep't 1987)).

It is undisputed that Nassau County had a statutory duty to indemnify the Officer Defendants for alleged negligence arising out of their duties to safeguard prisoners.  Based on the record, there can be no factual dispute that plaintiff was obligated to serve a notice of claim on the County, which he failed to do.

Accordingly, the Court grants summary judgment to the Officer Defendants on plaintiff's negligence claim based on the failure to satisfy the notice-of-claim requirement.

*Medical Defendants*

Jaghad and Members were employees of NUMC, which is a subsidiary of Nassau Health Care Corporation.  The Corporation is a "public benefit corporation" established by section 3402 New York's Public Authorities Law.  Section 3415 of the Public Authorities Law states:

> Except in an action for wrongful death, no action or special proceeding shall be prosecuted or maintained against the [Nassau Health Care Corporation], its members, officers or employees for personal injury or damage to real or personal property alleged to have been sustained by reason of the negligence, tort or wrongful act of the corporation or of any member, officer, agent or employee thereof, unless (a) notice of claim shall have been made and served upon the corporation within the time limit set by and in compliance with section fifty-e of the general municipal law…

N.Y. Pub. Auth. Law § 3415(a).  Plaintiff's negligence claims against Jaghad and Members concern their medical determinations and referrals while plaintiff was under their care at NUMC. There is no dispute that Nassau Health Care Corporation had a statutory duty, pursuant to the

10

Public Authorities Law, to indemnify employees such as Jaghad and Members in lawsuits concerning their treatment of plaintiffs.  Because plaintiff failed to serve a notice of claim on NUMC, his negligence action is barred.

Accordingly, the Court grants summary judgment for the Medical Defendants on plaintiff's negligence claim.

**Conclusion**

Based on the foregoing, the Officer Defendants' summary judgment motion is GRANTED except for the deliberate indifference and failure to intervene claims against Martingano.  The Medical Defendants' summary judgment motion is GRANTED in its entirety.

SO ORDERED.

Dated: Central Islip, New York
      March 4, 2026

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge

11